FILED
2017 Aug-16  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO LASALLE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2007-LDP11, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-LDP11, ACTING BY AND THROUGH ITS SPECIAL SERVICER, C-III ASSET MANAGEMENT LLC,** | CASE NO._____ |

      **Plaintiff,**

**v.**

**LG-328 HUNTSVILLE AL, LLC,**
**LG-369 DECATUR AL, LLC,**
**LG-377 OXFORD AL, LLC,**
**LG-409 FT. OGLETHORPE GA, LLC**
**LG-381 EVANSVILLE IN, LLC,**
**LG-435 BOWLING GREEN KY, LLC,**
**LG-332 W. MONROE LA, LLC,**
**LG-375 CANTON MI, LLC,**
**LG-404 FLOWOOD MS, LLC &**
**LG-379 GALLATIN TN, LLC,**

      **Defendants.**

---

## VERIFIED COMPLAINT AND APPLICATION FOR APPOINTMENT OF RECEIVER AND INJUNCTIVE RELIEF

---

COMES NOW, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as successor by merger to LaSalle Bank, National Association, as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage

1

Securities Trust 2007-LDP11, Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11 (the "Plaintiff" or "Trust"), acting by and through C-III Asset Management LLC, solely in its capacity as special servicer ("C-III"), and for its complaint against Defendants, LG-328 Huntsville AL, LLC, a Delaware limited liability company ("Huntsville LLC"), LG-369 Decatur AL, LLC, a Delaware limited liability company ("Decatur LLC"), LG-377 OXFORD AL, LLC, a Delaware limited liability company ("Oxford LLC"), LG-409 FT. OGLETHORPE GA, LLC, a Delaware limited liability company ("Oglethorpe LLC"), LG-381 EVANSVILLE IN, LLC, a Delaware limited liability company ("Evansville LLC"), LG-435 BOWLING GREEN KY, LLC, a Delaware limited liability company ("Bowling Green LLC"), LG-332 W. MONROE LA, LLC, a Delaware limited liability company ("Monroe LLC"), LG-375 CANTON MI, LLC, a Delaware limited liability company ("Canton LLC"), LG-404 FLOWOOD MS, LLC, a Delaware limited liability company ("Flowood LLC") and LG-379 GALLATIN TN, LLC, a Delaware limited liability company ("Gallatin LLC" and together with Huntsville, LLC, Decatur LLC, Oxford LLC, Oglethorpe LLC, Evansville LLC, Bowling Green LLC, Monroe LLC, Canton LLC, Flowood, LLC, collectively, the "Borrowers") states the following:

### Introduction

Pursuant to Rules 65 and 66 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 754 and 1367(a), Plaintiff seeks enforcement of the terms and conditions of certain Loan Documents (defined below).  This action is related to commercial loans to Borrowers in the original principal amounts as outlined below (the "Loans") held by Plaintiff which are secured by, among other things, mortgages, security agreements, and assignments of leases and rents encumbering ten (10) income-producing properties leased to Logan's Roadhouse, a full service restaurant chain, located in Alabama, Georgia, Louisiana, Indiana, Kentucky, Michigan,

2

Mississippi and Tennessee (collectively, "Properties").  The Loans are in default due to failure of Borrowers to make the payment due and owing on or before the maturity date of the Loans on May 7, 2017, (the "Maturity Date") as required under the Loan Documents.  As a result, Plaintiff seeks the following relief: (1) appointment of a receiver for assets comprising the Collateral (defined below), and (2) injunctive relief to effectuate the receivership estate.  In support hereof, Plaintiff relies upon the Verification of Cecilia Bolen incorporated herein, and the forthcoming Motion for Appointment of Receiver and Injunctive Relief and Request for Hearing and Memorandum of Law in support thereof.

## Parties

1.     U.S. Bank National Association is a national banking association with its designated main office located in Cincinnati, Ohio.  U.S. Bank National Association is the duly appointed and presently serving Trustee under the Trust created under that certain Pooling and Servicing Agreement (the "PSA") dated as of July 1, 2007, holding certain assets in trust including the Loans (as defined below) to the Borrowers.

2.     U.S. Bank National Association, not individually, but solely in its capacity as such Trustee under the PSA, acting by and through C-III, solely in its capacity as the duly authorized Special Servicer under the PSA, brings this action as Plaintiff with express reference to the Loans and the matters related thereto as hereinafter set forth.

3.     Defendant Huntsville LLC, is a Delaware limited liability company that maintains its principal place of business located at 301 South College Street, Charlotte, North Carolina 28288.  Upon information and belief, neither the members of Huntsville LLC nor the entities or individuals that are partners or members of the corporate parents of Huntsville LLC are citizens of Ohio.  Huntsville LLC owns certain real property and improvements located at 4249 Balmoral

3

Drive, Huntsville, Alabama (the "Huntsville Property").   Huntsville LLC has authorized Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104 as its registered agent to accept service of process.

4.      Defendant Decatur LLC, is a Delaware limited liability company that maintains its principal place of business located at 301 South College Street, Charlotte, North Carolina 28288.  Upon information and belief, neither the members of Decatur LLC nor the entities or individuals that are partners or members of the corporate parents of Decatur LLC are citizens of Ohio.  Decatur LLC owns certain real property and improvements located at 2315 Beltline Road S.W., Decatur, Alabama (the "Decatur Property").   Decatur LLC has authorized Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104 as its registered agent to accept service of process.

5.      Defendant Oxford LLC, is a Delaware limited liability company that maintains its principal place of business located at 301 South College Street, Charlotte, North Carolina 28288. Upon information and belief, neither the members of Oxford LLC nor the entities or individuals that are partners or members of the corporate parents of Oxford LLC are citizens of Ohio. Oxford LLC owns certain real property and improvements located at 40 Ali Way Oxford, Alabama (the "Oxford Property").  Oxford LLC has authorized Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104 as its registered agent to accept service of process.

6.      Defendant Oglethorpe LLC, is a Delaware limited liability company that maintains its principal place of business located at 106 York Road, Jenkintown, Pennsylvania, 19046.  Upon information and belief, neither the members of Oglethorpe LLC nor the entities or individuals that are partners or members of the corporate parents of Oglethorpe LLC are citizens

4

of Ohio. Oglethorpe LLC owns certain real property and improvements located at 2584 Battlefield Parkway, Ft. Oglethorpe, Georgia (the "Oglethorpe Property"). Oglethorpe LLC has authorized Corporation Service Company, 40 Technology Parkway South Suite 300, Norcross, Georgia 30092 as its registered agent to accept service of process.

7. Defendant Evansville LLC, is a Delaware limited liability company that maintains its principal place of business located at 106 York Road, Jenkintown, Pennsylvania, 19046. Upon information and belief, neither the members of Evansville LLC nor the entities or individuals that are partners or members of the corporate parents of Evansville LLC are citizens of Ohio. Evansville LLC owns certain real property and improvements located at 5645 Pearl Drive, Evansville, Indiana (the "Evansville Property"). Evansville LLC has authorized Corporation Service Company, Suite 1610, 135 North Pennsylvania Street, Indianapolis, Indiana 46204 as its registered agent to accept service of process.

8. Defendant Bowling Green LLC, is a Delaware limited liability company that maintains its principal place of business located at 106 York Road, Jenkintown, Pennsylvania, 19046. Upon information and belief, neither the members of Bowling Green LLC nor the entities or individuals that are partners or members of the corporate parents of Bowling Green LLC are citizens of Ohio. Bowling Green LLC owns certain real property and improvements located at 2920 Scottsville Road, Bowling Green, Kentucky (the "Bowling Green Property"). Bowling Green LLC has authorized Corporation Service Company, 421 West Main Street Frankfort, Kentucky 40601 as its registered agent to accept service of process.

9. Defendant Monroe LLC, is a Delaware limited liability company that maintains its principal place of business located at 106 York Road, Jenkintown, Pennsylvania, 19046. Upon information and belief, neither the members of Monroe LLC nor the entities or individuals

4818-9033-3513 v2
2016798-000298 06/15/2017

that are partners or members of the corporate parents of Monroe LLC are citizens of Ohio. Monroe LLC owns certain real property and improvements located at 201 Constitution Drive, West Monroe, Louisiana (the "Monroe Property").   Monroe LLC has authorized Corporation Service Company,  501 Louisiana Avenue, Baton Rouge, Louisiana 70802 as its registered agent to accept service of process.

10.     Defendant Canton LLC, is a Delaware limited liability company that maintains its principal place of business located at 106 York Road, Jenkintown, Pennsylvania, 19046.  Upon information and belief, neither the members of Canton LLC nor the entities or individuals that are partners or members of the corporate parents of Canton LLC are citizens of Ohio.  Canton LLC owns certain real property and improvements located at 39605 Ford Road, Canton Michigan (the "Canton Property").   Canton LLC has authorized CSC-Lawyers Incorporating Service Company,  601 Abbot Road, East Lansing Michigan 48823 as its registered agent to accept service of process.

11.     Defendant Flowood LLC, is a Delaware limited liability company that maintains its principal place of business located at 301 South College Street, Charlotte, North Carolina 28288.  Upon information and belief, neither the members of Flowood LLC nor the entities or individuals that are partners or members of the corporate parents of Flowood LLC are citizens of Ohio.  Flowood LLC owns certain real property and improvements located at 227 Dogwood Boulevard, Flowood, Mississippi (the "Flowood Property").   Flowood LLC has authorized Corporation Service Company, Suite 150, 5760 I-55 North, Jackson, Mississippi 39211 as its registered agent to accept service of process.

12.     Defendant Gallatin LLC, is a Delaware limited liability company that maintains its principal place of business located at 106 York Road, Jenkintown, Pennsylvania, 19046.

4818-9033-3513 v2
2016798-000298 06/15/2017

Upon information and belief, neither the members of Gallatin LLC nor the entities or individuals that are partners or members of the corporate parents of Gallatin LLC are citizens of Ohio. Gallatin LLC owns certain real property and improvements located at 1007 Village Green Crossing, Gallatin, Tennessee (the "Gallatin Property").   Gallatin LLC has authorized Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203 as its registered agent to accept service of process.

## Jurisdiction and Venue

13.     This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.   Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

14.     Borrowers are all obligated for payment of the Loans, and all obligations under the Loan Documents are secured by all of the Properties, including three (3) Properties located in Alabama which include the Huntsville Property, Decatur Property, and Oxford Property.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the properties at issue are situated in this District.

## Factual Allegations

A.     **The Loans**

(i)     **The Loan Agreements and Original Notes**

16.     On or about April 9, 2007, each of the Borrowers obtained a Loan from Natixis Real Estate Capital Inc., a New York corporation (the "Original Lender")   pursuant to separate Loan Agreements executed by each Borrower and Original Lender dated April 9, 2007, (as assumed, amended, and assigned from time to time by the First Amendments to Loan

7

Agreement, collectively, the "Loan Agreements").   A true and correct copy of the Loan Agreements are attached hereto as **Exhibits A-1 through A-10**.

17.     The Loans are evidenced by those certain Promissory Notes dated April 9, 2007, made by each of the Borrowers in favor of Original Lender, in the original stated principal amounts as listed in each promissory note (as assumed, amended, and assigned from time to time, the "Original Notes").   A true and correct copy of the Original Notes are attached hereto as **Exhibits B-1 through B-10**.

18.     The original stated principal amounts of each the Original Notes that each Borrower signed are summarized as follows:

| Borrower | Original Principal Amount of Notes |
|---|---|
| LG-328 Huntsville AL, LLC | $3,500,000.00 |
| LG-369 Decatur AL, LLC | $3,510,000.00 |
| LG-377 Oxford AL, LLC | $2,560,000.00 |
| LG-409 Ft. Oglethorpe GA, LLC | $2,610,000.00 |
| LG-381 Evansville IN, LLC | $2,490,000.00 |
| LG-435 Bowling Green KY, LLC | $3,260,000.00 |
| LG-332 W. Monroe LA, LLC | $3,080,000.00 |
| LG-375 Canton MI, LLC | $2,730,000.00 |
| LG-404 Flowood MS, LLC | $3,310,000.00 |
| LG-379 Gallatin TN, LLC | $2,950,000.00 |

19.     The Original Notes call for payments in accordance with the terms set forth in Section 2 of the Loan Agreements executed by and between each Borrower and Original Lender

8

with payment in full of the entire outstanding principal balance and all accrued interest due on the Maturity Date.

**B.     The Collateral**

**(i)     The Mortgages.**

20.     To secure each of the Borrowers' obligations to Original Lender under the Original Notes, Borrowers granted to Original Lender a first priority security interest in the land and improvements associated with the Properties (collectively, "Real Property Collateral") pursuant to the following security instruments each dated April 9, 2007, as amended by those certain amendments to the security instruments of record in the applicable county recording office (collectively, the "Mortgages"):

| Borrower | County / State Recording Office | Instrument Number / Recording Number (Original & Amendments) |
|---|---|---|
| LG-328 Huntsville AL, LLC | Probate Court Madison County, Alabama | 20070424000028578 20071115000795340 |
| LG-369 Decatur AL, LLC | Probate Court Morgan County, Alabama | Book 2007, Page 21291 Book 2007, Page 60990 |
| LG-377 Oxford AL, LLC | Probate Court Calhoun County, Alabama | Book 4429, Page 564 Book 4466, Page 931 |
| LG-409 Ft. Oglethorpe GA, LLC | Clerk of Superior Court Catoosa County, Georgia | Book 1363, Page 250 Book 1402, Page 395 |
| LG-381 Evansville IN, LLC | Office of the Recorder of Vanderburgh County, Indiana | 2007R00010966 2007R00034085 |
| LG-435 Bowling Green KY, LLC | Office of the Clerk Warren County, Kentucky | Book 1865, Page 893 Book 1902, Page 161 |
| LG-332 W. Monroe LA, LLC | Land Records Ouachita Parish, Louisiana | Book 2557, Page 81 Book 2623, Page 399 |
| LG-375 Canton MI, LLC | Register of Deeds | Liber 46211, Page 841 |

9

| | Wayne County, Michigan | Liber 46772, Page 169 |
|---|---|---|
| LG-404 Flowood MS, LLC | Chancery Court Clerk's Office Rankin County, Mississippi | Book 3007 at Pages 74234-74260 Book 3007 at Pages 115348-115358 |
| LG-379 Gallatin TN, LLC | Office of Register of Deeds Sumner County, Tennessee | Book 2741, Page 687 & Book 2793, Page 466 (Re-recorded) Book 2927, Page 625 |

True and correct copies of the Mortgages and First Amendments are attached hereto as **Exhibits C-1 through C-10**.

      **(ii)**      <u>**The Assignment of Leases and Rents**</u>

21.    As further security for Borrowers' obligations to Original Lender, each Borrower absolutely and unconditionally assigned to Original Lender all of its rights, title, and interest in all rents, royalties, issues, profits, revenue, income, leases, security deposits, other deposits, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Collateral (collectively the "<u>Rents</u>") generated in connection with the Properties pursuant to the following Assignments of Leases and Rents of record in the applicable county recording office (collectively, the "<u>Assignments of Rents</u>"):

| Borrower | County / State Recording Office | Instrument Number / Recording Number |
|---|---|---|
| LG-328 Huntsville AL, LLC | Probate Court Madison County, Alabama | 200704240000285790 |
| LG-369 Decatur AL, LLC | Probate Court Morgan County, Alabama | Book 2007, Page 21316 |
| LG-377 Oxford AL, LLC | Probate Court Calhoun County, Alabama | Book 4429, Page 590 |
| LG-409 Ft. Oglethorpe GA, LLC | Clerk of Superior Court Catoosa County, Georgia | Book 1363, Page 279 |

4818-9033-3513 v2
2016798-000298 06/15/2017

| | | |
|---|---|---|
| LG-381 Evansville IN, LLC | Office of the Recorder of Vanderburgh County, Indiana | 2007R00010967 |
| LG-435 Bowling Green KY, LLC | Office of the Clerk Warren County, Kentucky | Book 1865, Page 918 |
| LG-332 W. Monroe LA, LLC | Land Records Ouachita Parish, Louisiana | Book 2084, Page 390 |
| LG-375 Canton MI, LLC | Register of Deeds Wayne County, Michigan | Liber 46211, Page 898 |
| LG-404 Flowood MS, LLC | Chancery Court Clerk's Office Rankin County, Mississippi | Book 3007, at Pages 74261-74270 |
| LG-379 Gallatin TN, LLC | Office of Register of Deeds Sumner County, Tennessee | Book 2741, Page 722 & Book 2793, Page 493 (Re-recorded) |

True and correct copies of the Assignments of Rents are attached hereto as **Exhibits D-1 through D-10**.

### (iii)  The Financing Statements

22.     Pursuant to the Mortgages, Borrowers' obligations were further secured by certain personal property of Borrowers, including without limitation, Borrowers' fixtures, furniture, equipment, leases, proceeds, accounts and other assets (collectively, the "Personal Property Collateral" and together with the Real Property Collateral and the Rents, collectively, the "Collateral").   The Collateral encompasses all real and personal property related to the Properties.

23.     Original Lender's security interests in the Personal Property Collateral was perfected through the filing of the following UCC-1 Financing Statements recorded with the Delaware Department of State on April 12, 2007, and UCC-3 Financing Statement Amendment(s) maintaining and continuing a perfected security interest in the Personal Property

11

Collateral (as amended, continued from time to time, and assigned to Plaintiff, the "Financing Statements"):

| Borrower | Recording Numbers in Delaware Dept. of State (Original, Continuations & Assignments to Plaintiff) |
|---|---|
| LG-328 Huntsville AL, LLC | 2007 1375723<br>2011 3913103<br>2016 6310625<br>2017 3716922 |
| LG-369 Decatur AL, LLC | 2007 1375160<br>2011 3913129<br>2016 6310617<br>2017 3740179 |
| LG-377 Oxford AL, LLC | 2007 1375350<br>2011 3914572<br>2016 6310854<br>2016 7344704<br>2017 3719090 |
| LG-409 Ft. Oglethorpe GA, LLC | 2007 1407963<br>2011 3974907<br>2016 6390379<br>2017 3739700 |
| LG-381 Evansville IN, LLC | 2007 1356715<br>2011 3893222<br>2017 1391033<br>2017 3740583 |
| LG-435 Bowling Green KY, LLC | 2007 1431112<br>2011 3975235<br>2016 6421430<br>2017 4632482 |
| LG-332 W. Monroe LA, LLC | 2007 1354017<br>2011 3893206<br>2017 1391371<br>2017 3742134 |
| LG-375 Canton MI, LLC | 2007 1391597<br>2011 3932152<br>2016 6361206<br>2017 3741037 |
| LG-404 Flowood MS, LLC | 2007 1377281<br>2011 3913095<br>2016 6310914<br>2017 3740823 |
| LG-379 Gallatin TN, LLC | 2007 1373348<br>2011 3914721<br>2016 6310765<br>2017 3741236<br>2017 3741680 |

4818-9033-3513 v2<br>2016798-000298 06/15/2017

True and correct copies of the Financing Statements are attached hereto as **Exhibits E-1 through E-10**.

**(iv)     Additional Assurances**

24.     As additional security for Borrowers' obligations to Original Lender, American Realty Capital, LLC, William M. Kahane and Nicholas S. Schorsch   (the "Guarantors") absolutely and unconditionally guaranteed and promised to pay certain "Guaranteed Obligations" of all Borrowers pursuant to those certain Guaranty of Recourse Obligations Agreement (as assumed, amended and modified from time to time, the "Guaranties"), each dated as of April 9, 2007, as transferred and assigned to Plaintiff.   A true and correct copy of the Guaranties are attached hereto as **Exhibits F-1 through F-10**.

25.     Each Borrower entered into a Deposit Account Agreement each dated April 9, 2007, (the "Cash Management Agreements").   Pursuant to the Cash Management Agreements and pursuant to the Loan Agreements, each Borrower gave Original Lender certain rights with regard to each Borrowers' cash, revenues, property income derived from payment of Rents as provided in Section 3 of the Loan Agreement.   A true and correct copy of the Cash Management Agreement executed by each Borrower is attached hereto as **Exhibit G**.

26.     Each Borrower entered into an Assignment of Agreements, Licenses, Permits and Contracts in favor of Original Lender assigning all its right, title and interest in, to and under the documents, contracts, instruments, plans, permits, licenses, approvals, applications, trade names, insurance policies, equipment leases, purchase and sale agreements, environmental indemnification agreements, property management agreements, asset management agreements, development agreements and other instruments (collectively, the "Assignment of Agreements").

13

A True and correct copy of the Assignment of Agreements executed by each Borrower is attached hereto as **Exhibit H.**

**C**. **The Note Splitter and Modification Agreement(s)**

27.     Pursuant to the Note Splitter and Modification Agreement each dated July 3, 2007 (the "Splitter Agreements") by and between each Borrower and Original Lender, the Original Notes were split evenly into two (2) promissory notes dividing the original principal balance of each of the Original Notes in half.  Each Borrower executed (1) that certain Amended and Restated Promissory Note A-l dated July 3, 2007, payable by each Borrower to Original Lender in the principal amount of 50% of each of the Original Notes (as assumed, amended, and assigned from time to time, the "A-l Note") and (2) that certain Amended and Restated Promissory Note A-2 dated July 3, 2007, payable by each Borrower to Original Lender in the principal amount of 50% of each of the Original Notes (the "A-2 Note", together with the A-l Note, as assumed, amended, and assigned from time to time, the "Split Notes"). A true and correct copy of each of the Splitter Agreements and Split Notes are attached hereto as **Exhibits I-1 through I-10**.

28.     The principal amounts of each of the Original Notes were restated, amended, and split into the principal amounts listed in each of the Split Notes that each Borrower signed are summarized as follows:

| Borrower | Principal Amount of A-1 Note | Principal Amount of A-2 Note |
|---|---|---|
| LG-328 Huntsville AL, LLC | $1,750,000.00 | $1,750,000.00 |
| LG-369 Decatur AL, LLC | $1,755,000.00 | $1,755,000.00 |
| LG-377 Oxford AL, LLC | $1,280,000.00 | $1,280,000.00 |

14

| LG-409 Ft. Oglethorpe GA, LLC | $1,305,000.00 | $1,305,000.00 |
|---|---|---|
| LG-381 Evansville IN, LLC | $1,245,000.00 | $1,245,000.00 |
| LG-435 Bowling Green KY, LLC | $1,630,000.00 | $1,630,000.00 |
| LG-332 W. Monroe LA, LLC | $1,540,000.00 | $1,540,000.00 |
| LG-375 Canton MI, LLC | $1,365,000.00 | $1,365,000.00 |
| LG-404 Flowood MS, LLC | $1,655,000.00 | $1,655,000.00 |
| LG-379 Gallatin TN, LLC | $1,475,000.00 | $1,475,000.00 |

29.     The Split Notes remain secured by the Mortgages and Loan Documents. The Splitter Agreements provide that the Split Notes shall constitute the "Note" or "note" as referenced in the Loan Agreements, Mortgages, Assignment of Rents, and all other Loan Documents.

**D. The Intercreditor Agreement & Initial Assignments of the A-1 and A-2 Notes**

30.     Initially, Original Lender owned and held all of the Split Notes. Pursuant to the A Notes Intercreditor Agreement dated July 1, 2007, (the "Intercreditor Agreement"), Original Lender assigned, sold, and transferred all of the A-1 Notes to the Trust, and Original Lender subsequently assigned, sold, and transferred the A-2 Notes to a separate trust for securitization. A true and correct copy of the Intercreditor Agreement is attached hereto as **Exhibit J**.

31.     As contemplated in the Intercreditor Agreement and pursuant to the General Assignments dated July 5, 2007, (the "A-1 Note General Assignments") and Allonge executed contemporaneously with the A-1 Note General Assignments, Original Lender assigned, sold and transferred its interest in the A-1 Note, Mortgages and all Loan Documents, (excluding the A-2 Note), to LaSalle Bank, National Association, as Trustee for the registered holders of J.P.

15

Morgan Chase Commercial Mortgage Securities Trust 2007-LDP11, Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11  (the "A-1 Noteholder").  A true and correct copy of each of the A-1 Note General Assignments are attached hereto as **Exhibits K-1 through K-10**.  Copies of each A-1 Note Allonge are attached to the A-1 Notes and included in **Exhibits I-1 through I-10,** above.

32.    Each A-2 Note is owned and held by second securitized trust. As contemplated in the Intercreditor Agreement and pursuant to the General Assignment dated July 5, 2007, (the "A-2 Note General Assignments") Original Lender assigned, sold and transferred its interest in the A-2 Notes, (excluding the A-1 Note, Mortgages, and other Loan Documents), to LaSalle Bank, National Association, as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP12, Commercial Mortgage Pass-Through Certificates, Series 2007-LDP12 (the "A-2 Noteholder").

33.    Section 2 of the Intercreditor Agreement provides that the A-1 Noteholder maintains exclusive custody of and record title under the Mortgages and all other documents evidencing or securing the Split Notes. *See* **Exhibit J**, Intercreditor Agreement, Section 2.

34.     Pursuant to Section 3.3 of the Intercreditor Agreement all decisions, consents, waivers, approvals, and other actions under the Loans (which includes both the A-1 Notes and A-2 Notes), shall be taken by the A-1 Noteholder as the owner and holder of the A-1 Notes.  The A-2 Noteholder shall not exercise any rights with respect to any A-2 Note. The Loans are serviced and administered under the PSA of the A-1 Noteholder.  *See* **Exhibit J**, Intercreditor Agreement, Section 3.3.

35.    Section 3.1 of the Intercreditor Agreement appoints A-1 Noteholder (as successor in interest to Original Lender as the A-1 Noteholder) as the attorney-in-fact for all of the A-2

16

Noteholders. A-1 Noteholder is responsible for servicing and administering the Loans, and collecting any and all payments from Borrowers on each of the Split Notes.

36. The Split Notes are of equal priority and secured by the Mortgages, and any payments and recoveries obtained by A-1 Noteholder are distributed on a *pari passu* basis among the holders of the A-1 Notes and A-2 Notes.

**E.**     **Assignments to Plaintiff**

37. Pursuant to the General Assignments dated June 28, 2017, (the "A-1 Note General Assignments to Plaintiff ") and Allonge (the "Plaintiff Allonge") A-1 Noteholder assigned all rights and directed all payments under the A-1 Notes be made to the order of Plaintiff.   A true and correct copy of each of the A-1 Note General Assignments to Plaintiff are attached hereto as **Exhibits L-1 through L-10**.  Copies of each Plaintiff Allonge are attached to the A-1 Notes and included in **Exhibits I-1 through I-10, above**.

38. The Mortgages and Assignments of Rents were assigned to Plaintiff by the A-1 Noteholder by various Assignment of Deed of Trust / Mortgage and Assignment of Assignment of Leases and Rents of record in the applicable county recording office as follows (collectively, the "Mortgage and ALR Assignments"):

| Borrower | County / State Recording Office | Instrument Number / Recording Number |
|---|---|---|
| LG-328 Huntsville AL, LLC | Probate Court Madison County, Alabama | Instrument No. 20170713000402870 |
| LG-369 Decatur AL, LLC | Probate Court Morgan County, Alabama | Book 2017, Page 5476 |
| LG-377 Oxford AL, LLC | Probate Court Calhoun County, Alabama | Book 4844, Page 156 |

4818-9033-3513 v2
2016798-000298 06/15/2017

| | | |
|---|---|---|
| LG-409 Ft. Oglethorpe GA, LLC | Clerk of Superior Court Catoosa County, Georgia | Book 1887, Page 683 |
| LG-381 Evansville IN, LLC | Office of the Recorder of Vanderburgh County, Indiana | 2017R00016725 |
| LG-435 Bowling Green KY, LLC | Office of the Clerk Warren County, Kentucky | Book 2725, Page 365 Book 2725, Page 371 |
| LG-332 W. Monroe LA, LLC | Land Records Ouachita Parish, Louisiana | Book 3586, Page 648 |
| LG-375 Canton MI, LLC | Register of Deeds Wayne County, Michigan | Liber 53829, Page 1236 |
| LG-404 Flowood MS, LLC | Chancery Court Clerk's Office Rankin County, Mississippi | Book 3017, Pages 64930-64933 |
| LG-379 Gallatin TN, LLC | Office of Register of Deeds Sumner County, Tennessee | Book 4572, Page 586 |

True and correct copies of the documents comprising the Mortgage and ALR Assignments are attached hereto as collective **Exhibits M-1 through M-10.**

39.     For purposes of this Complaint, the Loan Agreements, First Amendment(s) to Loan Agreements, Original Notes, Split Notes, Splitter Agreements, Mortgages, Assignments of Rents, Financing Statements, Guaranties, Cash Management Agreements, Assignments of Agreements, Intercreditor Agreement, the Mortgage and ALR Assignments, General Assignments, Allonge(s), and all other documents evidencing or relating to the Loan are referred to herein as the "Loan Documents."

40.     Plaintiff is the A-1 Noteholder responsible for servicing and administering the Loans, and collecting any and all payments from Borrowers under the Split Notes. As provided in Section 2 of the Intercreditor Agreement, Plaintiff, as the A-1 Noteholder, maintains exclusive custody of and record title under the Mortgages and all other documents evidencing and securing

18

the Split Notes. Plaintiff is the owner and holder of the A-1 Notes, Mortgages, and other Loan Documents (except the A-2 Notes) and is entitled to enforce all provisions thereof.

41.     Pursuant to certain assignments, endorsements, and/or transfers of the Loan Documents, described above, Plaintiff is (i) entitled to the right to receive all payments due under the Split Notes; (ii) entitled to exercise all rights and remedies under the Loan Documents; and (iii) the beneficiary and holder of the liens, security interests, and rights to enforce the terms and provisions contained within the Loan Documents.

## D.     Cross-Default and Cross-Collateralization

42.     The Loans are cross-defaulted and cross-collateralized with each other.  Pursuant to Sections 10.23 and 10.24 of the Loan Agreement and Sections 32 and 33 of the Mortgages, the Loans are cross-defaulted and cross-collateralized with each other so that an Event of Default under any of the Split Notes or Mortgages shall constitute an Event of Default under all of the Split Notes and Mortgages as if a single blanket lien were placed on the Properties as security for the Split Notes.

43.     Specifically, Sections 10.23 and 10.24 of the Loan Agreements and Sections 32 and 33 of the Mortgages provide, in relevant part as follows:

> Borrower agrees that the Mortgage and the Contemporaneous Security Instruments (as defined below) are and shall be cross-collateralized and cross-defaulted with each other so that (a) an Event of Default under either the Mortgage or the Contemporaneous Security Instruments shall constitute an Event of Default under both the Mortgage and Contemporaneous Security Instruments which secure the Note; (b) an Event of Default under the Note or shall constitute an Event of Default under the Mortgage and the Contemporaneous Security Instruments; (c) the Mortgage and Contemporaneous Security Instruments shall constitute security for the Note and the Contemporaneous Note as if a single blanket lien were placed on the Property and the other Properties as security for the Note.

> The Mortgage is made contemporaneously with or prior to those certain promissory notes, together with any and all renewals, amendments, modifications, consolidation and extensions

19

thereof named on Schedule 4 attached hereto (herein referred to as the "Contemporaneous Notes"), made by the borrowers named on Schedule 4 attached hereto ("Other Borrowers"), and secured by those certain mortgages and/or deeds of trust by such Other Borrowers in favor of Lender (the "Contemporaneous Security Instruments"), and any other agreements, documents or instruments now or hereafter evidencing, securing or otherwise relating to the Contemporaneous Notes, including, but not limited to, any guaranty of recourse obligations {the Contemporaneous Notes, the Contemporaneous Security Instruments and such other agreements, documents and instruments, together with any and all renewals, amendments, extensions and modifications thereof, are herein collectively referred to as the "Contemporaneous Loan Documents"), and which relates to the properties more particularly described on Schedule 4 attached hereto {the "Other Property"). The Other Property and the Property are collectively referred to herein as the "Crossed Properties" which defined term shall also apply to the remaining cross-collateralized properties following a partial release.

44.     Summarily, the Loans are cross-defaulted and cross-collateralized.

## F.     **Event of Default**

45.     An Event of Default has occurred and is continuing under the Loan Documents, specifically including, without limitation, the failure of Borrowers to satisfy in full the amounts due and owing under the Loan Document on or before the Maturity Date of the Loans (the "Event of Default").

46.     By letter dated May 8, 2017, Plaintiff notified each of the Borrowers of the Event of Default (the "Default Notice").   The Default Notice notified all of the Borrowers that all amounts due and owing, including the entire outstanding principal balance of the Loans, together with all accrued and unpaid interest at the Default Rate (as defined in the Loan Documents), property protection advances, late charges, expenses of Plaintiff (including attorneys' fees) and all other amounts due under the Loan Documents (collectively, the "Loan Obligations") are immediately due and owing.   A true and correct copy each Default Notice is attached hereto as **Exhibits N-1 through N-10**.

4818-9033-3513 v2
2016798-000298 06/15/2017

47.     As of the date hereof, however, Borrowers remain in default of the Loan Documents for failure to satisfy the Loan Obligations in full, and the Event of Default continues as the Loan Obligations remain outstanding.

48.     Due to the Events of Default, Plaintiff is authorized to exercise all of its rights and remedies under the Loan Documents, which include, but are not limited to, the contractual remedy for the appointment of a receiver, and other legal and equitable remedies authorized under the Loan Documents and applicable law.

## G.     Plaintiff's Remedies Under the Loan Documents

### (i) Contractual Remedies

49.     Pursuant to the terms and provisions of the Loan Documents, including Section 2(b) of the Assignments of Rents, the Borrower's license to collect Rents is automatically terminated upon the occurrence of an Event of Default. *See* **Exhibits D-1** though **D-10**, Assignment of Rents, Section 2(b).

50.     Pursuant to the terms and provisions of the Loan Documents, including Section 5(a) of the Assignments of Rents and Section 10 (a)(vii) of the Mortgages, Plaintiff is entitled to apply for and obtain the immediate appointment of a receiver of the Collateral, without regard to the adequacy of the value of the Properties, or to the solvency of the Borrowers, all as more particularly set forth in the Loan Documents.  *See* **Exhibits D-1** though **D-10**, Assignment of Rents, Section 5(a); **Exhibits C-1** through **C-10**, Mortgages, Section 10(a)(vii).

51.     Pursuant to the express terms of the Loan Documents, Borrowers agreed that, upon an Event of Default, Plaintiff "may enter upon the Premises and take possession of the Premises by its officers, agents, or employees, or by a court-appointed receiver and for the operation, protection, repair, and maintenance of the Premises and in connection therewith,

21

Lender shall be entitled to take possession of and use all books of account and financial records of Assignor [Borrower] and its property managers or representatives relating to the Premises." *See* Assignment of Agreements, **Exhibit H**, at Section 2.

52.     Borrowers also consented to Plaintiff's right to seek appointment of a receiver following an Event of Default.  An example of the language contained in the Mortgages is as follows:

> 10(a)(vii) <u>Remedies</u>.   Upon the occurrence and during the continuance of any Event of Default, Lender or Beneficiary, acting on behalf of Lender, may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Trustor and in and to the Trust Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender or Beneficiary, acting on behalf of Lender, may determine, in their sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender or Beneficiary:
>
> * * *
>
> (g) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Trustor, or of any Person liable for the payment of the Debt.

*See* **Exhibits C1** through **C10** at Section 10(a)(vii).

53.      Except for certain limited exceptions as set forth in the Loan Documents, Borrowers have no personal liability for repayment of the Loans; Plaintiff's sole recourse for repayment of the Loans is recovery from the Collateral.  Pursuant to the express terms of the Loan Agreements, Plaintiff's recourse as to the Collateral includes the right to seek the appointment of a receiver to protect its interest in the Collateral.

54.     Plaintiff is contractually and equitably entitled to the appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Collateral to maximize the Plaintiff's recovery of amounts due under the Loan Documents.

22

**H.**   <u>**Federal Law Supporting The Appointment of Receiver**</u>

55.     Pursuant to FED. R. CIV. P. 66, the Court may appoint a receiver upon application by a party in writing.

56.     A duly appointed receiver is an officer of the Court whose powers are set forth by 28 U.S.C. §§ 959(b) and 754 (in pertinent part), which provide,

> [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which the property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

28 U.S.C. § 754.

57.     Upon the appointment of a receiver for property, real, personal or mixed, the territorial jurisdiction of the Court shall extend to any judicial district in which receivership property is found.  See 28 U.S.C. § 1692.

58.     In furtherance of its duties, a duly appointed receiver may administer property in its possession whether such property is located in the district where the receiver was appointed or another district including the right of a receiver to sell assets over which it is appointed.  See 28 U.S.C. §§ 2001 and 2004.

59.     Appointment of a receiver to manage and operate the Properties is just and necessary in this case based on Plaintiff's contractual right to apply for and obtain the

4818-9033-3513 v2
2016798-000298 06/15/2017

appointment of a receiver at law, as well as equitable considerations including Borrowers' failure to satisfy the Loan Obligations under the Loan Documents.

60.     All conditions precedent to the maintenance of this action have been performed.

61.     In this action, Plaintiff is seeking:

a) appointment of a receiver to oversee, administer, and manage the Properties pending the foreclosure or a receiver sale pursuant to 28 U.S.C. §§ 2001 and 2004, (exempt from the private sale requirements of 28 U.S.C. § 2001(b) requiring three (3) separate appraisals), or other disposition of the Properties and Collateral;

b) preliminary injunction, to take effect and remain in effect for the duration of this case, or until further order of this Court to facilitate the receivership estate; and

c) such other and further relief the Court may deem just and appropriate under the circumstances.

## Count I
## Breach of Contract

62.     Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

63.     Under the Loan Documents, an Event of Default has occurred and is continuing due to Borrowers' failure to satisfy the Loan Obligations on the Maturity Date which constitutes a breach of contract under the Loan Documents.

64.     As the proximate result of Borrowers' breach of the Loan Documents, Plaintiff is contractually entitled to exercise its remedies under the Loan Documents which includes applying for and obtaining the appointment of a receiver for the Collateral.

## Count II
## Appointment of a Receiver

24

65. Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

66. Based on the representations of the Borrowers in the Loan Documents, the Properties are the sole assets of each Borrower.

67. Except for certain limited exceptions as set forth in the Loan Documents, Borrowers have no personal liability for repayment of the Loans, leaving the Collateral as Plaintiff's likely sole recourse for repayment of the Loan Obligations.

68. The Loan Documents expressly allow Plaintiff to seek and obtain appointment of a receiver upon the occurrence of an Event of Default.

69. "Appointment of a receiver is appropriate where the parties have contractually agreed to a receivership." *Amer. Bank & Trust Co. v. Bond Int'l Ltd.*, 2006 WL 2385309 (N.D. Okla. Aug. 17, 2006). *See also Police & Fire Dept. Sys. of the City of Detroit v. Orchard Park, LLC*, 2009 WL 481266 *5 (N.D. Cal. Feb. 24, 2009) (receiver appointed where loan documents provided for appointment of receiver to manage properties and collect rents); *Alden Park, LLC v. Anglo Irish Bank Corp.*, 2009 WL 499157 *3 (E.D. Mich. Feb. 26, 2009) (receiver appointed where loan documents provided for appointment); *Franchise Loan Trust 1998-I v. S & A Fee Properties SPE 2, LLC*, 2008 WL 4093620 *1 (E.D. Tex. Aug. 26, 2008) (receiver appointed where loan documents provided for same and defendants were in default).

70. In the instant case, the Loan Documents expressly authorize appointment of a receiver. Thus, the Plaintiff's right to appointment of a receiver due the Borrowers' default has been bargained for and agreed upon by the parties and such a right should be enforced by this Court.

25

71.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of, to hold, manage, and/or liquidate the Collateral.

72.     Plaintiff requests that the Court appoint **Trigild, Inc.** ("Trigild") as the Receiver for the Properties with the primary persons responsible being William J. Hoffman, its president and CEO, and David Wallace, its General Counsel.  As set forth in more detail in the affidavit of William J. Hoffman, attached hereto as **Exhibit O**, Trigild and its principals have nearly forty (40) years of experience, national geographic coverage, and expertise necessary to act as Receiver in this case.

73.     Plaintiff further requests that the Court grant the Receiver all the rights, powers, duties, authority, and protections ordinarily granted to a receiver and necessary to take possession of, maintain, and preserve the value of the Collateral, including, without limitation, (a) the right to sell the Properties and Collateral, or any part thereof, pursuant to 28 U.S.C. § 2001, *et seq.,* upon the request of Plaintiff and in accordance with terms hereafter approved by Plaintiff and the Court; (b) the right to hire professionals, on terms approved by Plaintiff, to help the Receiver manage, protect, preserve and liquidate the Properties; and (c) the right to enter the Properties and perform such investigations and assessments as may be necessary to evaluate the Collateral and to act in accordance with the terms of the proposed order which is attached hereto as **Exhibit P**.

74.     Plaintiff further requests that the Receiver's compensation be paid monthly in arrears from the revenues generated from the Properties and Collateral as follows: $15,000.00 for the first (1st) month of the Receiver's appointment; $10,000.00 for the second (2nd) month through the sixth (6th) month of the Receiver's appointment; and $7,500.00 for the seventh (7th)

26

month and each month thereafter of the Receiver's appointment plus $255.00 per hour for additional services outside the customary scope of receivership, if required (the "Receiver Fee").

75.     Upon information and belief, the Receiver Fee can be derived and paid from the proper and sufficient collection of the Rents generated by the Properties.  Plaintiff reserves the right to object to any fees or expenses Plaintiff believes to be unreasonable.

76.     Finally, Plaintiff requests that the Receiver be required to post a Receiver's Bond in an amount equal to twenty five thousand dollars ($25,000.00).

## Count III
## Injunctive Relief

77.     Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

78.     In order to fortify and enable the Receiver appointed by this Court, and to protect the interests of Plaintiff, Plaintiff requests that this Court enter a preliminary injunction, to take effect and remain in effect for the duration of this case, or until further order of this Court. Without an injunction to bolster the Receiver's powers, it is unlikely that the receivership with succeed.

79.     Under applicable law, Plaintiff is entitled to preliminary injunctive relief if: (i) Plaintiff is likely to prevail on the merits of its claims; (ii) Plaintiff would suffer an irreparable injury if the court does not grant a preliminary injunction; (iii) a preliminary injunction would not cause substantial harm to others; and (iv) a preliminary injunction would be in the public interest.

80.     Each of these elements is met in this case. The proof is uncontroverted that Borrowers have defaulted under the Loan Documents so there is a high likelihood that Plaintiff will prevail on the merits of this case.

81.     Absent injunctive relief, the Receiver and concomitant receivership are unlikely to succeed.  Plaintiff is entitled to injunctive relief to aid the Receiver in fulfilling its duties and obligations with respect to the Properties.  Plaintiff will suffer imminent harm and irreparable injury and will be left without an adequate remedy at law unless it is granted immediate injunctive relief.

82.     Finally, an injunction is necessary to prevent interference by any of the Borrowers or their agents and employees with the Receiver's operation of and control over the Properties and Collateral.

83.     Granting the relief requested will not harm the Borrowers and will benefit the public interest by providing increased assurances to the restaurant tenant and their employees and invitees of proper, safe, and continuing operation of the Properties.  Without such relief and due to the limited recourse nature of the obligations of Borrowers under the Loan Documents, there is no other adequate remedy at law to protect the interest of Plaintiff, a money judgment being unavailable and/or ineffectual in this matter.

84.     Accordingly, for the reasons stated herein, Plaintiff requests this Court to: (i) enter a preliminary injunction against the Borrowers, and their successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with them: (1) enjoining them from possessing and controlling the Collateral and from interfering in any way with the possession, control, or liquidation of the Collateral by the Receiver; (2) requiring them to turn over to the Receiver the possession, custody, and control over the Collateral, including, without limitation, Borrowers'

records, books of account, ledgers and all business records thereof, wherever located and however maintained (including, without limitation, information contained on computers and any and all software relating thereto, as well as all banking records, statements, and cancelled checks); (3) requiring them to turn over to the receiver all documents which pertain to the Collateral, including, but not limited to, all insurance policies, whether currently in effect or lapsed, all contracts, leases and subleases, management agreements, franchise agreements, royalty agreements, employment agreements, licenses, permits or governmental approvals, assignments, or other agreements of any kind whatsoever relating to the Collateral; (4) enjoining Borrowers from removing any property from the business location and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operation of the Properties and other Collateral; (5) requiring them to pay and turn over immediately to the Receiver all rents and Revenues from the Collateral; and (6) to perform all acts necessary to transfer possession to the Receiver all the Properties and other Collateral related to the ownership, possession, or operation of the business and all accounts, accounts receivable, all keys, books, records, equipment, and all things in any manner related to the ownership, possession or operation of the Properties.

85.    Plaintiff also requests that this Court enter a preliminary injunction enjoining the Borrowers or any party who is provided with notice of the Court's order, from prosecuting any claim against Borrowers or the Properties, other than in this action and only after proper motion is filed and an order is entered allowing such party to file such claim herein.

86.    Plaintiff also requests that upon final trial of this cause, that this Court enter a permanent injunction consistent with the above preliminary injunctions, except as modified to the extent necessary to protect Plaintiff's interests in the Collateral.

87.     Plaintiff shall provide prior notice to the Borrowers of any hearing on its request for injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

a.   That the Court grant Plaintiff the relief it seeks on all counts;

b.   That the Court appoint Trigild, Inc. as the Receiver to take possession and control of the Properties and other Collateral (including all personal property thereto, Rents, and revenues therefrom), to maintain, preserve, and/or liquidate the Collateral, including stabilizing the operation of the Properties;

c.   That the Receiver appointed by this Court shall segregate, preserve, protect, collect and account for, and manage, operate, lease, maintain and preserve, the Properties, including the Rents;

d.   That the Court issue such orders as may be necessary under 28 U.S.C. §§ 754 and 1692 so as to permit the Receiver to effectuate the terms of his appointment in such other judicial districts in which the Collateral may be located;

e.   That Borrowers and their agents charged with operating and/or managing the Properties promptly render an accounting for all Rents and other income from the Properties and all other revenue from the Properties received by Borrowers as requested by the Receiver and provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance and leasing of the Properties as may be required by this Court to provide the receiver appointed by this Court with the information necessary to perform its obligations as receiver of the Collateral;

30

f.   That Borrowers promptly pay over to the Receiver and cause Borrowers' affiliates and the management companies currently managing the Properties promptly to pay over to the receiver (1) all deposits of tenants of the Properties and all Rents, revenues and other income from the Properties and all other funds which are a part of Collateral which are currently in their possession or control; and (2) all such deposits, Rents, revenue and other income from the Properties and other funds which are a part of Collateral which are received by any of them from and after the appointment of the Receiver;

g.   That the Receiver pay to Plaintiff on a monthly basis any income and revenue from the Plaintiff in excess of that amount reasonably required to manage, operate, lease, maintain and preserve the Properties and to pay the Receiver Fee;

h.   That Plaintiff be permitted, at its sole election, and be authorized but not required to make such advances to the receiver for the benefit and account of Borrowers under the Loan Documents as may be necessary from time to time, in the exercise of Plaintiff's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Properties to the extent that Rents, income and other revenue from the Properties, are insufficient to pay such costs and expenses, all without Plaintiff becoming a mortgagee in possession or incurring any other liability to Borrowers;

i.   That any such advances made by Plaintiff pursuant to the foregoing paragraph (h) of this prayer be additional indebtedness which is owed to Plaintiff under the Notes and is secured by the Mortgages and the other Loan Documents;

j.   That the Receiver be authorized, upon request by Plaintiff, to list or otherwise advertise for sale and to solicit offers to purchase the Properties and to sell the Properties, on such terms as are acceptable and approved in writing prior to such sale by Plaintiff, by way of public or private

31

sale or other disposition in accordance with the applicable provisions of 28 U.S.C. §§ 2001 and 2004, free and clear of all security interests, liens, claims and other interests with all valid security interests and liens to attach to the proceeds of such sale(s);

k.   That nothing in the relief requested herein prohibit Plaintiff from commencing and consummating judicial or non-judicial foreclosure proceedings against all or any part of the Properties under and pursuant to the provisions of the Mortgages without further order of this Court;

l.   That all Plaintiff's rights, remedies, and causes of action against Borrowers or the Collateral be preserved and reserved for future action or proceedings; and

m.   That this Court award such other and further relief as is just and proper.

Respectfully submitted this 15th day of August, 2017.

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

s/ Matthew M. Cahill
R. Spencer Clift, III (Ala. Bar #: 2139Y79C)
Matthew M. Cahill (Ala. Bar #: ASB 4087E64C)
165 Madison Avenue, Suite 2000
Memphis, TN  38103
Telephone:  901.526.2000
Facsimile: 901.577.2303
sclift@bakerdonelson.com
mcahill@bakerdonelson.com

**Attorneys for Plaintiff**

4818-9033-3513 v2
2016798-000298 06/15/2017

## **VERIFICATION**

I declare that the above statements are true to the best of my knowledge, information, and belief, under penalty of perjury.

> U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as successor by merger to LaSalle Bank, National Association, as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP11, Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11,

> By:   C-III Asset Management LLC, a Delaware limited liability company, acting solely in its capacity as Servicer pursuant to that certain Pooling and Servicing Agreement dated July 1, 2007

> By:   _Cecilia Bolen_
> Name:  Cecilia Bolen
> Its:     Servicing Officer

STATE OF TEXAS            )
                                          ) SS:
COUNTY OF DALLAS      )

The foregoing instrument was acknowledged and signed before me this the 8th day of August, 2017, on behalf of C-III Asset Management LLC, a Delaware limited liability company, acting solely in its capacity as Servicer pursuant to that certain Pooling and Servicing Agreement dated July 1, 2007, being first duly sworn to oath, deposes, and says that she has read this document and that the foregoing is based on information within her personal knowledge, and that she has no reason to believe that the foregoing is not true and correct.

**IN WITNESS WHEREOF**, I have hereunto subscribed my name and affixed my hand and official seal, at Irving, Texas, this 8th day of August, 2017.

_____
Notary Public

My Commission Expires: 6/28/2021

TROY W CONCIENNE
Notary ID #129474184
My Commission Expires
June 28, 2021

33

**List of Exhibits**

| Exhibit No. | Description |
|---|---|
| **A-1** through **A-10** | Loan Agreements & First Amendments to Loan Agreement |
| **B-1** through **B-10** | Original Notes |
| **C-1** through **C-10** | Mortgages |
| **D-1** through **D-10** | Assignments of Rents |
| **E-1** through **E-10** | Financing Statements, Continuations & Assignments |
| **F-1** through **F-10** | Guaranty of Recourse Obligations Agreements |
| **G** | Cash Management Agreements |
| **H** | Assignments of Agreements |
| **I-1** through **I-10** | Note Splitter Agreements, Split Notes, A-1 Note Allonges, A-1 Note Plaintiff Allonges |
| **J** | Intercreditor Agreement |
| **K-1** through **K-10** | A-1 Note General Assignments |
| **L-1** through **L-10** | A-1 Note General Assignments to Plaintiff |
| **M-1** through **M-10** | Mortgage and ALR Assignments |
| **N-1** through **N-10** | Default Notices |
| **O** | Trigild, Inc. Affidavit |
| **P** | Receiver Order |

4818-9033-3513 v2
2016798-000298 06/15/2017