FILED
2017 Nov-27 AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>LG-328 HUNTSVILLE, AL, LLC, et al.,<br><br>Defendants. | Civil Action Number<br>5:17-cv-01378-AKK |

## MEMORANDUM OPINION AND ORDER

This case arises out of the default of ten cross-collateralized commercial loans secured by, among other things, mortgages on income-producing properties leased to Logan's Roadhouse and serviced by U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as successor by merger to LaSalle Bank, National Association, as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP11, Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11, acting by and through C-III Asset Management LLC, solely in its capacity as special servicer (U.S. Bank). Presently before the court is U.S. Bank's Motion for the Appointment of Receiver and Injunctive Relief, doc. 5, and an identical request made in the Complaint, doc. 2, which are now fully briefed, docs. 6; 31;

and 32, and ripe for review. Upon consideration of the parties' briefs and evidentiary submissions, both requests are due to be denied.

## I. STANDARD OF REVIEW

"A receiver is a neutral court officer appointed by the court, usually to 'take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of . . . undertaking any [] appropriate action.'" *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2981, at 5 (1973)). In the Eleventh Circuit, it is settled that "federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction." *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998). Accordingly, this court looks to Rule 66 of the Federal Rules of Civil Procedure which provides that "[t]hese rules govern an action in which the appointment of a receiver is sought . . . [b]ut the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule." FED. R. CIV. P. 66.

Typically, the party seeking a receivership over certain property must "show that he or she has some legally recognized right in that property that amounts to more than a mere claim against [the] defendant." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure Civil* § 2983 (2d

ed. 1997); *see also Piambino v. Bailey*, 757 F.2d 1112, 1131 n.46 (11th Cir. 1985). The decision to appoint a receiver is an equitable one which rests "in the sound discretion of the court," *Hutchinson v. Fidelity Investment Ass'n*, 106 F.2d 431, 436 (4th Cir. 1939). While the inquiry is not governed by rote application of particular criteria, federal courts consider a number of factors regarding the propriety of establishing a receivership including: (1) "the probability that fraudulent conduct has occurred or will occur;" (2) the validity of the "claim by the party seeking the appointment;" (3) whether there is an "imminent danger that property will be concealed, lost, or diminished in value;" (4) the "inadequacy of [alternative] legal remedies;" (5) the "lack of a less drastic equitable remedy;" and (6) the "likelihood that appointing the receiver will do more good than harm." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993); *see also IP Co., LLC v. Cellnet Tech., Inc.*, No. 1:06-cv-3048, 2008 WL 11337779, at *1 (N.D. Ga. Dec. 18, 2008) (Carnes, J.) (applying similar factors); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure Civil* § 2983 (2d ed. 1997.) (listing "fraudulent conduct on the part of the defendant; the imminent danger of the property being lost . . . or squandered; the inadequacy of the available legal remedies; the probability that harm to [the] plaintiff . . . would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the

possibility of irreparable injury to [her] interests in the property" as factors to consider in appointing a receiver).

The creation of a receivership "is an extraordinary remedy that should be employed with the utmost caution," *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (citation omitted), but "there is no general requirement of a hearing in Rule 66, and the court may approve of the appointment of a receiver without a hearing where the record discloses sufficient facts to warrant it." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1189 (11th Cir. 1991).

## II. FACTS

The Defendants, a collection of limited liability corporations based in Alabama, and seven other states, obtained ten individual loans from Natixis Real Estate Capital, Inc. (Natixis) in April 2007. Doc. 6 at 2–3. The loans were secured by, among other things, mortgages on ten income-producing properties leased by the Defendants to Logan's Roadhouse, a restaurant chain. *Id.* at 2. The properties were also subject to Deposit Account Agreements, which require the direct submission of rental payments "to a lockbox under the exclusive control of Plaintiff." Doc. 31 at 9; *see also* Docs. 6 at 5, 18; 1-20 at 2–5.[1]

Roughly three months after executing the original loan agreements, the Defendants entered into a Note Splitter and Modification Agreement with Natixis.

---

[1] The parties have not pointed out any relevant distinctions among the various loan documents signed by the individual entities in this case. So, for purposes of this opinion, the court assumes that the underlying loan documents are substantively identical.

4

Doc. 1 at 14. This agreement split the principal amount of each of the original notes in half and divided that amount evenly between two new notes, the "A-1 Note" and the "A-2 Note." *Id.* at 14–15. The split notes remained secured by the previously executed loan documents, but the note tiers were combined and transferred into two separate trusts for securitization pursuant to an intercreditor agreement between Natixis and two other entities. *Id.* at 15–17; Doc. 6 at 6–8. The intercreditor agreement provides that the A-1 noteholder maintains "exclusive custody of and record title under the Mortgages" and generally makes all the decisions necessary to administer and service the loans, but that the split notes are of equal priority and received payments and recoveries are distributed evenly between the A-1 and the A-2 noteholders. Doc. 1 at 16, 18–19. The split notes are cross-defaulted and cross-collateralized effectively functioning as a single lien placed across all the properties as security for both the A-1 and A-2 notes. *Id.* at 19; Doc. 6 at 9. In other words, a default under any of the split notes or mortgages constitutes a default under all of the split notes and mortgages. Docs. 6 at 9; 1 at 19–20. A failure to satisfy the full amount due under the loan documents on the maturity date constitutes a default. Doc. 1 at 20; *see also* Doc. 1-1 at 68.

The day after the loans matured, U.S. Bank sent a letter to each Defendant notifying them that they were in default and demanding immediate payment of all amounts due and owing. Doc. 1 at 20; *see also* Doc. 1-29 at 2–5. To date, those

amounts remain unpaid. Doc. 1 at 21. The loan documents provide that, in the event of a default, U.S. Bank may seek the appointment of a receiver to administer the properties. *Id.* at 21–22; *see also* Doc. 1-12 at 9. In light of this provision, U.S. Bank has filed a motion requesting the appointment of a receiver and additional injunctive relief to enable the receiver to function effectively. Docs. 6 at 10–11; 1 at 24–30.

### III. DISCUSSION

Based on its contention that the loan documents provide an express right to the appointment of a receiver in the event of a default, U.S. Bank argues that it is contractually entitled to a court-appointed receiver. Setting aside whether such an agreement is even enforceable,[2] the court notes that the loan documents do not indicate that the Defendants ever consented to the automatic appointment of a receiver. Rather, the loan documents provide only that U.S. Bank may "apply for the appointment of a receiver . . . without notice and without regard for the adequacy of the security for the Debt." Doc. 6 at 14; *see also* Doc. 1-12 at 9. In other words, contrary to U.S. Bank's initial contention in this matter, the relevant

---

[2] Courts have reached different resolutions to this difficult issue. *See Am. Bank & Trust Co. v. Bond Int'l Ltd.*, No. 06-CV-0317, 2006 WL 2385309, at *8 (N.D. Okla. Aug. 17, 2006) (holding that a lender was "entitled to the appointment of a receiver under the bargained-for provisions of the parties' agreement"); *but see PNC Bank, N.A. v. Presbyterian Ret. Corp.*, No. 14-0461, 2014 WL 6065778, at *4 (S.D. Ala. Nov. 13, 2014) (opining that "the discretionary, equitable nature of the receivership remedy . . . would be destroyed if a plaintiff could lock in a positive legal right to appointment of a receiver . . . [accordingly] Rule 66 . . . is not supplanted by a . . . contract enforcement approach").

contractual language does not reflect the existence of an affirmative right to a receiver as a remedy for default. Thus, the court turns to the equitable principles traditionally governing the receivership remedy.

"[T]he appointment of a receiver is not automatic . . . [and is a] remedy [that] should be . . . granted only when clearly necessary to protect plaintiff's interests in the property." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988). To obtain this relief, U.S. Bank has the burden of demonstrating the necessity of a receiver to preserve its rights in the subject property. *See, e.g.*, *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1262 (D. Or.2009). In that respect, the court notes that many of the factors traditionally governing the appointment of a receiver are not in dispute. For example, the Defendants do not contest that they are in default, or that U.S. Bank is virtually certain to prevail on the merits of its breach of contract claim. Doc. 31 at 3, 12. Similarly, there is no question that, as a creditor with a security interest in real property, U.S. Bank "[has] an interest in the property . . . that may provide a basis for convincing the court to appoint a receiver." *Baron*, 703 F.3d at 306 (citation omitted).

On the other hand, U.S. Bank does not allege that fraud has occurred or that it is likely to occur. This factor weighs strongly against the appointment of a receiver as it has a direct bearing on the touchstone of the receivership inquiry— whether the appointment is "clearly necessary to protect plaintiff's interests in the

property." *Nyland*, 839 F.2d at 97; *Gordon v. Washington*, 295 U.S. 30, 37 (1935) (noting that the core purpose of a receivership is "to preserve and protect the property pending its final disposition").[3]

Here, U.S. Bank asserts primarily that a receivership is warranted because the subject properties are in danger of diminishing in value or being squandered. More specifically, U.S. Bank contends that (1) the properties have incurred significant amounts of deferred maintenance totaling more than $400,000; (2) that the Defendants have failed to provide requested financial information to either U.S. Bank, or to the marketing firm engaged by the Defendants to liquidate the subject

---

[3] U.S. Bank asserts correctly that courts "[have] appointed receivers even where there was no evidence of fraud." *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008). However, one of the cases U.S. Bank cites for this proposition, *United States v. Trusty Capital, Inc.*, No. 06-CV-8170, 2007 WL 44015 (S.D.N.Y. Jan. 5, 2007), falls within the specialized regulatory context of the Small Business Investment Act, as amended, codified at 15 U.S.C. §§ 661 *et seq*. Given that unique posture, the court finds the case distinguishable. The other cited case, *Tama Broadcasting*, primarily involved a motion to remand. The court does discuss the propriety of granting a receivership in the case, but it never actually does so. *Tama Broad.*, 550 F. Supp. 2d at 489. Thus, it is also distinguishable from the situation presently before this court. And, even if these cases were otherwise persuasive, they uniformly involve substantially more dire financial situations than the one presently facing the court. *See Tama Broad.*, 550 F. Supp. 2d at 492 (noting that the Defendant "will soon lose all of its assets" and that its ability to continue operations was at risk based on FCC violations); *Trusty Capital,* 2007 WL 44015, at *3, 7–8 (noting that it was "unquestionable that Defendant has violated federal rules and regulations" in addition to the mere default of payment obligations and further emphasizing the specialized statutory schema governing the case under the Small Business Investment Act); *see also U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 251–54 (S.D.N.Y. 2012) (appointing a receiver based on the "inexorable" diminution of the value of the subject properties based on the likely termination of the tenant's franchise license). Thus, in accord with the historical practice of federal courts, this court finds that the absence of fraud or potential fraud bears significantly on the equities of the receivership appointment. *Aviation Supply*, 999 F.2d at 317 (relying heavily on potentially fraudulent conduct involved in the case to justify appointment a receiver); *see also Watkins*, 934 F.2d at 1189 (noting that "in light of the egregious nature of appellants' actions," transferring assets from entities in an attempt to evade collection efforts, the district court did not err in appointing a receiver without an evidentiary hearing).

properties; and (3) that the private broker engaged by the Defendants to liquidate the properties has made little progress in generating sales. Doc. 32-1 at 3–6. For the reasons stated below, none of these contentions warrant the appointment of a receiver.

First, as to the deferred maintenance issue, appointment of a receiver is only appropriate if there is an "imminent danger of the diminution of the value of the properties." *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 250–51 (S.D.N.Y. 2012) (allowing the appointment of a receiver because the properties at issue faced an "inexorable" diminution in value based on the imminent loss of a franchise license). The court cannot make such a finding here because U.S. Bank controls the rental receipts and does not dispute that the properties provide significant cash flows, *see* docs. 1 at 27; 33 at 25; 6 at 17. Indeed, the record indicates that the subject properties are fully operational and that U.S. Bank, as well as a third party broker, expect the properties to generate strong revenues into the future. *See* Docs. 6 at 17; 33 at 25. Moreover, the evidence suggests that Logan's Roadhouse has generally complied with its responsibilities under the lease and resolved most of the maintenance issues U.S. Bank's review identified. Doc. 33 at 19–20. In short, there is no suggestion that deferred maintenance expenses pose any imminent risk to the value of the properties.

Second, although the record supports U.S. Bank's contention regarding various communication issues between the parties concerning Logan's financial situation and the development of a concrete repayment plan, it seems the Defendants and Logan's Roadhouse have made substantial progress in ameliorating those concerns. For example, Logan's Roadhouse has now provided the Defendants with financial statements related to its recent emergence from Chapter 11 bankruptcy proceedings, and the Defendants in turn provided that information to the broker they have engaged to liquidate the properties. Doc. 31 at 10–11. Moreover, the Defendants have retained a consulting firm to interface with U.S. Bank, and have recently presented U.S. Bank with a Loan Resolution Proposal outlining a plan for liquidating the properties and paying off the defaulted loans in full. Doc. 33 at 6, 22–25.

Third, the record belies U.S. Bank's contention that the Defendants and their broker have made insufficient progress in selling the properties at issue. In fact, in just over a month, one of the Defendants has entered into a purchase agreement to sell its property, and two other Defendants have executed letters of intent and are in the process of negotiating purchase agreements. Doc. 31 at 11. Given this recent progress, it is evident that the Defendants are actively taking steps to fulfill their obligations under the loan agreements by liquidating the subject properties.

The record simply does not support U.S. Bank's contention that a receiver is necessary to facilitate this ongoing process.

In addition to the evidence discrediting U.S. Bank's contentions, the intricate involvement of a third party tenant, Logan's Roadhouse, also militates against the appointment of a receiver. The court is not convinced that a receiver would resolve the underlying issues in this case given that Logan's Roadhouse is responsible under its lease for maintenance of the subject property and is required to administer any funds released by either U.S. Bank, or a receiver, for maintenance purposes. Docs. 31 at 9–10; 32 at 11; 32-1 at 4; 33 at 6. Indeed, as U.S. Bank explains, the lack of tenant financial information due to Logan's Roadhouse's recent Chapter 11 filing is what has hindered the Defendants' marketing efforts, a situation the parties have since resolved. Docs. 31 at 10–11; 32-1 at 5, 32. In essence, the receiver would step into the shoes of the Defendants with respect to dealing with a non-party that controls the maintenance of the subject properties and has failed to provide financial information in a timely fashion. Therefore, because "[t]he summary remedy by receivership, with the attendant burdensome expense, should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid," *Washington*, 295 U.S. at 39, the court declines to appoint a receiver absent

11

any showing that the receiver would be in a better position than the Defendants to resolve the issues in this case.

The court also declines to appoint a receiver because of the significant administrative costs—in this case, at least, a total of $65,000 for the first six months and $7,500 for each subsequent month, plus the costs associated with collecting and assembling the various records pertaining to the administration of each property. Doc. 1 at 26–27; s*ee also Cellnet Tech.*, 2008 WL 11337779, at *2 (recognizing the "cumbersome" nature of the receivership procedure); *Waag v. Hamm*, 10 F. Supp. 2d 1191, 1195 (D. Colo. 1998) (recognizing the complications posed by appointment of a receiver and the likely "significant" expense such an appointment would incur). U.S. Bank is correct to note that the properties generate sufficient rental income to cover these costs. Doc. 1 at 27. However, from the court's perspective, this fact weighs against appointing a receiver. As stated previously, U.S. Bank already has control over this income stream and has offered no credible contention supporting the existence of an immediate threat to that income, or to the overall value of the subject properties. The addition of a receiver, paid by funds already controlled by U.S. Bank, would only create duplicative administration fees and further increase the risk of confusion among the various entities involved in this case while potentially impeding recently generated sales momentum.

Finally, the court declines to appoint a receiver due to U.S. Bank's failure to demonstrate convincingly the absence of an adequate legal remedy. *See United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011) (explaining that as an equitable remedy a receivership is properly imposed only when "there is no remedy at law or the remedy is inadequate"); *see also United States v. Jefferson Cty.*, Nos. CV-75-S-666-S, CV-74-S-17-S, 2013 WL 4482970, at *15 (N.D. Ala. Aug. 20, 2013) (collecting cases suggesting that a receivership is typically a remedy of last resort and only appropriate when other remedies are unlikely to be successful). This is a plain vanilla breach of contract case in which liability is undisputed. The case is ripe for early summary disposition, and once U.S. Bank moves for summary judgment, it would likely obtain a judgment along with the right to utilize all available methods to collect on that judgment. *See* Doc. 1-12 at 9 (explaining that in the event of default the non-defaulting party may "recover judgment on the Note either before, during or after any proceeding for the enforcement of this mortgage"). There is no showing that the use of the regular judicial process to resolve this case would impair the value of the properties or otherwise waste the underlying assets at issue.

## IV. CONCLUSION AND ORDER

"Under federal law, appointing a 'receiver is an extraordinary equitable remedy,' which should be applied with caution." *Canada Life Assurance Co. v.*

*LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (quoting *Aviation Supply Corp.*, 999 F.2d at 316). U.S. Bank's contention that the Defendants have taken inadequate steps to preserve and liquidate the subject properties, and that to the extent the Defendants have taken such actions they have inadequately communicated them to U.S. Bank, is simply insufficient to demonstrate that the equities warrant the application of such an extraordinary remedy. *See id.* This is specifically the case where, as here, the Defendants have not sought to avoid their obligations under the lease or to otherwise defraud U.S. Bank, and where the properties are not in any imminent danger of diminution in value. Accordingly, the court finds that the appointment of a receiver is unwarranted, and therefore declines to reach the issue of the injunctive relief necessary to effectuate the purposes of the receivership. U.S. Bank's motion to appoint receiver, doc. 5, and the identical request included in the complaint, doc. 2, are **DENIED**.[4]

---

[4] To the extent U.S. Bank's request in its initial complaint for injunctive relief to "bolster the Receiver's powers," doc. 1 at 27, is a request for preliminary injunctive relief even absent the appointment of a receiver, the request is denied. Among other things, a preliminary injunction requires a showing that "irreparable injury will be suffered unless the injunction issues." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). Indeed, "the absence of a substantial likelihood of irreparable injury . . . standing alone, make[s] preliminary injunctive relief improper." *Id.* For the same reasons outlined above, the record simply does not indicate that, absent injunctive relief, U.S. Bank will suffer a concrete, irreparable injury. And, even if the record did reflect an immediate risk of monetary losses, or the diminution in the value of the subject property absent an injunction, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). U.S. Bank's asserted injuries are entirely economic, and, as such, they cannot amount to an irreparable injury as a matter of law.

**DONE** the 27th day of November, 2017.

_/s/ Abdul Kallon_
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE